## COMMONWEALTH *vs.* BRUNO RIVERA.

Essex. November 14, 1986. — March 6, 1987.

Present: DREBEN, KAPLAN, & SMITH, JJ.

*Practice, Criminal,* Argument by prosecutor, Instructions to jury. *Evidence,* Consciousness of guilt.

At a robbery trial during which discrepancies appeared in various witnesses' identifications of the defendant as the robber, and the prosecution relied heavily upon evidence of the defendant's "consciousness of guilt," the judge's instructions to the jury, to which no objection was taken, created a substantial risk of a miscarriage of justice by reason of his failure to instruct, in accordance with principles articulated in *Commonwealth* v. *Toney,* 385 Mass. 575, 584-585 (1982), that (1) they are not to convict on the basis of evidence of flight or concealment alone and (2) they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant, and also by reason of the judge's omitting the word "innocent" from the instruction, itself suggested in the *Toney* case, that "feelings of guilt are sometimes present in innocent people." [608-610]

On retrial of a robbery case the judge was to consider, in his discretion, the appropriateness of allowing the prosecutor to state during closing argument that the defendant shaved his mustache "shortly before the lineup" at which a witness identified him as the robber. [610-611]

INDICTMENTS found and returned in the Superior Court Department on April 29, 1982.

The case was tried before *Robert A. Mulligan,* J.

*Maureen B. Brodoff,* Committee for Public Counsel Services, for the defendant.

*Robert J. Bender,* Assistant District Attorney, for the Commonwealth.

SMITH, J. An Essex County grand jury returned three indictments against the defendant. One indictment charged him with two counts of armed robbery, the others with assault and battery by means of a dangerous weapon and assault with intent to murder. After a trial in the Superior Court, the jury returned

verdicts of guilty on both counts of armed robbery and on the charge of assault and battery by means of a dangerous weapon. He was found not guilty on the indictment that charged him with assault with intent to murder. On appeal from the convictions the defendant contends that the judge misinstructed the jury and that the prosecutor committed prejudicial error in his closing argument.

After his conviction and sentence, the defendant filed both a motion for a new trial, alleging that the jury's deliberations may have been infected by extraneous influences, and a motion for a postverdict inquiry of the jurors. The motions were denied by the trial judge, and the defendant has appealed from that denial. All the appeals have been consolidated for review by this court.

We summarize the facts that the jury could find from the evidence. On September 30, 1978, a man entered a cleaning establishment in Salem. Two persons were in the store at the time, Anna Carpenter (an employee) and Helen Navroki (Carpenter's friend). The man pointed a gun at Carpenter and handed her a paper bag, indicating that she should put money into it. She was taking money out of the cash register when a customer, one Gumm, entered the store. Carpenter waited on her, but when Gumm started to leave the store, the man showed her his gun and ordered her to go behind the counter with the other two women. He then walked the three women to the rear of the store behind the equipment and clothes rack.

Michael Szczuka (the owner's son and Carpenter's nephew) then entered the store and saw the robber standing with his aunt, her friend, and Gumm. The robber directed Szczuka to join the others in the rear of the store. The four stood in a semi-circle facing the robber, who was standing a few feet away from them. The area was brightly lighted. He demanded that they give him their money, and they complied. Szczuka had been watching the robber for about five to ten minutes; he noticed that the gun was being held in a careless fashion. He decided to take a chance and reached for the weapon. A struggle ensued, and several shots were fired. Szczuka was wounded, and the robber fled with about $30 in cash. According to Gumm, the entire incident lasted fifteen to twenty minutes.

While recovering in a hospital, Szczuka was shown "hundreds" of photographs by the Salem police but made no identification of the robber. The defendant's photograph was not among the photographs examined by Szczuka. None of the other victims was asked to make an identification at that time.

In July, 1980, a Salem detective assembled a thirteen-photograph array which contained one photograph of the defendant. That photograph depicted the defendant's appearance about four or five years before the crime. The defendant had a mustache in the photograph. The detective showed the array to Carpenter and Szczuka; neither made an identification. Later, the array was shown to Gumm, who identified the defendant as the robber. Navroki was unavailable and never viewed the array.

On April 23, 1982, some time after the defendant was arraigned in a District Court, he was placed in a lineup with six other men. Szczuka, Carpenter and Navroki viewed the lineup separately. Gumm did not participate because she was out of the country at the time. Szczuka selected the defendant as the robber.[1] Carpenter did not identify anyone in the lineup as the perpetrator. Navroki identified someone other than the defendant as the robber.

Carpenter, Gumm, and Szczuka testified at the defendant's trial concerning the events which had occurred at the cleaning establishment on September 30, 1978.[2] Carpenter testified that she had viewed the photographic array in 1980 and the lineup in 1982 but had not been able to make an identification of the robber. She was not asked to attempt any in-court identification. Gumm stated that she had identified the defendant as the robber upon examination of the array in July, 1980.[3] She made an

---

[1] At trial Szczuka testified that at the lineup: "I just looked right at him, and there was immediate recognition. I — I questioned for a second that he didn't have a mustache, which he had during the holdup, but there was no other significant difference in his appearance."

[2] Navroki was not called as a witness. Her selection of someone other than the defendant at the lineup was brought to the jury's attention.

[3] A police officer testified that at the time Gumm made the identification, she informed him that "this was the man, but would not swear — swear

in-court identification. Szczuka testified that he did not make an identification of the robber when he viewed the photographic array in July, 1980, but did select the defendant as the robber at the lineup held on April 23, 1982. He also made an in-court identification of the defendant.

In addition to the above evidence, there was evidence that the defendant escaped from the Salem jail on March 11, 1983, while he was awaiting trial on these charges. He was eventually apprehended in July, 1984.

The defendant did not present any witnesses at the trial but attempted, through cross-examination and closing argument, to attack the certainty of the identifications.[4]

1. *The judge's instructions to the jury.* The defendant argues that his conviction should be reversed and a new trial ordered because, among other things, the judge erred in instructing the jury as to consciousness of guilt. We agree and order a new trial.

Evidence was presented at trial that in the years preceding the crime the defendant had "facial hair." One of the victims (Szczuka) testified that at the time of the crime (September, 1978) the robber, whom he later identified as the defendant, had a mustache. A police officer testified that the defendant had a mustache at his arraignment which took place "earlier in 1982 or late 1981." Szczuka testified that at the lineup (April 23, 1982), the defendant was clean-shaven.

In his closing argument the prosecutor stated, "You recall the officer['s testimony that] shortly before this lineup [he] saw the defendant with a mustache, but somehow at the lineup, the defendant had shaved off the mustache. . . ." The prosecutor suggested that the defendant "shaved that mustache off hoping to avoid an identification."[5] The prosecutor then argued that

---

to it in court if she was the only witness to identify the assailant." Gumm was recalled to the witness stand. She testified that she was sure of her identification but that she "didn't want to be the only one to put him away."

[4] The defendant did not file any motion to suppress the identifications on the ground that the identification procedures had been unduly suggestive and were, therefore, conducive to mistaken identification.

[5] The defendant objected to this line of argument but was overruled. He claims that the prosecutor's argument was error because it distorted the evidence. We discuss the claimed error briefly later in this opinion.

the defendant's shaving of his mustache and escape from jail "shows what is called consciousness of guilt."

The judge in his instructions to the jury on the issue of consciousness of guilt did not mention the "shaving off of the mustache" evidence but focused entirely on the testimony concerning the defendant's escape from jail on the eve of trial. His brief instructions are outlined in the margin.[6] The defendant, on appeal, argues that the instructions were inadequate under the principles set forth in *Commonwealth* v. *Toney,* 385 Mass. 575, 584-585 (1982).

In *Toney,* the court made "some observations relative to jury instructions on evidence of flight." *Id.* at 584. It stated at 585, "We think that a judge should instruct the jury (1) that they are not to convict a defendant on the basis of evidence of flight or concealment alone . . . , and (2) that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant. . . ." In the instant case, the judge did not instruct the jury upon these requirements. We hold that the omission was error. *Commonwealth* v. *Matos,* 394 Mass. 563, 566 (1985). The defendant, however, did not offer any objection to the judge's instruction. Therefore, we consider the error under the "substantial risk of a miscarriage of justice" standard. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). *Commonwealth* v. *Stewart,* 398 Mass. 535, 547 n.10 (1986).

---

[6] "Well, in this particular case you heard mention of consciousness of guilt. That is flight by a person after a crime has been committed or after he has been accused of a crime which may be motivated by a variety of factors which are consistent with innocence. There are numerous reasons why a person might flee. Flight in this case the Commonwealth calls an escape or similar conduct does not necessarily reflect feelings of guilt. Second, even where a person's flight does demonstrate feelings of guilt it does not necessarily mean that the person is in fact guilty because feelings of guilt are sometimes present in [. . .] people."

The judge's instruction followed, except for one word, the cautionary language suggested by the court in *Commonwealth* v. *Toney,* 385 Mass. at 585 n.6, to be given, if requested, prior to the required instructions on consciousness of guilt. The judge's instructions omitted the word "innocent" where indicated above. The absence of one word is ordinarily not deemed to be of great moment. However, in the circumstances present in this case, the omission is significant.

Apart from the evidence that could have formed the basis for an inference of consciousness of guilt, as recited by the Commonwealth in its closing argument, the case against the defendant was hardly overwhelming. There was evidence that four persons had viewed the robber at close quarters under bright lights for a period of time. Three of them examined a photographic array containing the defendant's photograph. Only one (Gumm) selected the defendant's photograph as the robber. Three of the four victims viewed the lineup. Only one (Szczuka) selected the defendant, while another person (Navroki) picked out another individual as the robber. Thus, because of the discrepancies in the various witnesses' identifications of the defendant as the robber, the Commonwealth relied, to a large extent, on the evidence of "consciousness of guilt" to prove its case. Indeed, in his closing argument, the prosecutor spent a considerable amount of time dwelling on the evidence that he asserted constituted consciousness of guilt on the part of the defendant. Further, the judge not only failed to instruct on the requirements of *Toney* but the instructions he did give on consciousness of guilt were flawed (see n. 6). In these circumstances, we conclude that there is a substantial risk of a miscarriage of justice, and a new trial is necessary. *Commonwealth* v. *Brow,* 20 Mass. App. Ct. 375, 379-380 (1985).

2. *Other issues.* The only issue that may resurface at a new trial concerns that portion of the prosecutor's closing argument where he stated that the defendant shaved off his mustache "shortly before the lineup." The defendant claimed that the argument distorted the evidence.

There was ample evidence that the defendant had a mustache for several years up to and including his arraignment which took place, according to a police officer, "earlier in 1982 or late 1981." There also was evidence that the defendant did not have a mustache at the time of the lineup on April 23, 1982, which took place sometime after the arraignment. The flaw in the prosecutor's argument, according to the defendant, is that there was no evidence as to the date of the arraignment.

We assume that, at the new trial, the prosecutor will place in evidence the date of the arraignment, a date that we are

sure is easily obtainable. The trial judge will have considerable discretion, depending on the proximity of the arraignment date to the date of the lineup, whether to permit the prosecutor to argue along the same line followed at the first trial.

*Judgments reversed.*

*Verdicts set aside.*