COMMONWEALTH vs. ROLANDO MERCADO.

Middlesex.   April 14, 1987. — June 26, 1987.

Present: GRANT, KAPLAN, & WARNER, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Assault with Intent to Kill. Mayhem. Practice, Criminal, Required finding, Instructions to jury. Joint Enterprise. Evidence, Consciousness of guilt.*

Convictions of a defendant on indictments for armed assault with intent to murder; mayhem; and assault and battery with a dangerous weapon, to wit, a baseball bat, were warranted by the evidence, on both an individual and a joint enterprise basis. [394-397]

Evience at a criminal trial that the defendant "sort of kicked" the victim, "like a nudge," even with the inference, lacking any direct evidence, that the defendant wore shoes, was insufficient to sustain his conviction of assault and battery with a dangerous weapon, to wit, a shod foot. [397]

At the trial of indictments, the judge properly denied the defendant's motions for required findings, where the evidence and inferences therefrom, as well as the credibility of the witnesses, presented issues to be considered by the jury. [397-398]

At a criminal trial, no error appeared in the judge's instructions to the jury on joint venture. [399]

At a criminal trial, it was error for the judge to omit from his jury instructions on consciousness of guilt an explanatory addendum as prescribed in *Commonwealth* v. *Toney*, 385 Mass. 585 n.6 (1982), after the defendant requested that such an addendum be included; however, reversal of the defendant's convictions was not required where, as the case stood or fell on the direct evidence of the commission of the crimes charged, any corroboration by evidence that the defendant gave a false statement to the police when arrested could have only negligible effect on the verdict. [399-401]

INDICTMENTS found and returned in the Superior Court Department on May 16, 1985.

The cases were tried before *J. Harold Flannery, J.*

*Suzanne Rudalevige* for the defendant.

*Catherine E. Sullivan,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. Ivan and Rolando Mercado, brothers, stood joint trial on four charges against each: armed assault with intent to murder, mayhem, assault and battery with a dangerous weapon, to wit, a baseball bat, and the same offense with a shod foot, all arising from an incident in Belmont on May 6, 1985. The "intent to murder" charges were reduced by the trial judge to "intent to kill."As to Ivan only, the shod foot charge was dismissed at the close of the Commonwealth's case. A Middlesex jury brought in verdicts of guilty on the other charges.[1] We deal with Rolando's appeal in which he complains of the judge's denial of motions for required findings of not guilty, and of certain instructions to the jury. We affirm his convictions except the shod foot conviction, which we reverse.

1. *The case.* The jury could well have seen the case thus. About 3:45 P.M., the eventual victim, Patrick Conlon, having finished his day's work, arrived home at 8 Bradley Road, Belmont. He had a meal and about 4:30 P.M. tried to take a nap in his bedroom on the second floor. This fronts on Bradley Road, a narrow, east-west, one way street, with traffic directed west; 8 Bradley is on the southerly side of the street. Conlon found sleep impossible because of extended, loud revving of a car engine. Looking out the window he saw the offending vehicle, a blue Chevrolet Malibu, parked at the curb in front of his house. The hood was up, but as Conlon watched, a man emerged from under the hood, closed it, and entered the car. The car took off, passed west to the end of the street, raced to the right up Pearson Road and, evidently circling the block, returned to Bradley Road and parked in the same spot as before, some five feet back of another car. Conlon had seen the car narrowly miss a child crossing the street on a tricycle. Revving began again, the hood went up, and man resumed work under it.

Conlon went downstairs, walked to within four or five feet of the man at the hood, told him he shouldn't be speeding

---

[1] Each was sentenced to eight to ten years' imprisonment at M.C.I., Cedar Junction, upon each conviction, the sentences to run concurrently.

because of danger to children on the block, and complained of the noise. The man, identified as the defendant Rolando, slammed his wrench on the radiator, approached Conlon, and said, "What are you going to do, huh?" He struck at Conlon, who blocked the blow with his left hand and knocked Rolando to the ground with his right.

Here Ivan, who, unobserved by Conlon, had been sitting in the car, or standing near the hood, went to the back of the car and took from the trunk a black aluminum baseball bat. He stepped behind Conlon, who was "hunched over" Rolando with an arm raised. Without a word, Ivan, using a two handed grip as if hitting a baseball, brought the bat down on the back of Conlon's skull. Conlon put a hand to the wound; blood ran through his fingers. He tried to rise. Ivan, moving to Conlon's right side, swung again with the same grip and caught Conlon in the forehead above the right eye. As Conlon collapsed to the street, Rolando, unharmed, scrambled up. While righting himself, Rolando "sort of kicked" Conlon, "like a nudge," between kidney and chest. About the same time, or perhaps some seconds after the kick, Ivan struck Conlon's inert body with the bat between shoulder and head. At his point, Rolando took the bat from Ivan and, from his upright position, brought it down on ("whacked") Conlon; probably, as will be seen, the blow struck Conlon on the head. The bat was then thrown into the trunk of the car. The brothers entered the car together and, with the defendant driving, sped off, leaving Conlon on the street, lying on his side, motionless and bleeding, with his head resting on the rear tire of the parked car. The whole episode, from Rolando's blocked blow to the brothers' departure, lasted no longer than two minutes or so.

Conlon was taken to Mt. Auburn Hospital in Cambridge where his wounds were observed thus. (i) A three-inch horizontal laceration to the back of the head slightly to the right of center, with a fracture of the occipital bone just below the laceration. (ii) A three-inch, bone deep, diagonal laceration over the right side of the forehead. (iii) A fracture of the right petrous temporal bone (inside the ear) with resulting blood in the right ear drum. (iv) A constellation of fractures down the

right side of the face and into the right eye socket; these included two fractures of the orbit bone (surrounding the eye socket), one near the bottom of the right eye, the other near the nose, and fractures of the maxilla (central bone of the face and upper jaw). This constellation accounted for a noticeable flattening of the right side of the face and a displacement of the right eye, which was swollen shut. The first, second, and third injuries may be related to Ivan's three blows as above described; the fourth (constellation) to Rolando's blow or the combined effect of Ivan's third blow and Rolando's. At all events, Rolando's blow was to the head area, for Conlon suffered no other injuries consistent with their being inflicted by a bat; indeed, the injuries in the head area were the only ones requiring medical treatment.[2]

Conlon was in the hospital for nine days, returned after eight days for a restorative operation requiring four hospital days, and was out of work for three months. Besides a disfiguring scar on his forehead, he suffers from an enophthalmos condition (nonalignment of his right eye with the left), total loss of sense of smell, and total loss of hearing in his left ear.

Reserved to point 4 below are the facts regarding the arrest of Ivan and Rolando by the police on May 7, the day after the incident.

2. *Denial of required findings of not guilty.* Eyewitnesses at the scene, called by the Commonwealth, besides Conlon himself, were Daniel Shaughnessy and Robert Valstyn, who at the time were on the outer steps of 19 Bradley Road, across the way from the encounter, and Robert Wilkins, Conlon's neighbor at 60 Pearson Road, at the corner of Bradley Road and Pearson Road, who was on his side porch, which looked out on Bradley Road. As might be expected in such a case, the accounts of these three men do not tally in all details but the main features of the picture are sufficiently clear, with Valstyn's testimony the most consecutive and coherent. The

---

[2] Aside from the massive head wounds, Conlon sufferd a minor abrasion of his left knee. When he woke in the hospital, he had a pain, he said, in his side, a cut on his right hand, and a swelling of an arm. The doctors who testified made no mention of these latter complaints.

account of Ivan's blows and Rolando's taking the bat from him has multiple support in the evidence, and here we need to emphasize that this evidence also supports a finding that Rolando was so positioned that he could observe and apprehend fully what Ivan was doing to Conlon and the gross effects of those attacks upon Conlon. Valstyn explained how his attention was diverted just after the bat was in Rolando's hands.[3] Wilkins, however, observed Rolando "whacking" Conlon. It is perhaps unnecessary for analytic purposes to locate where on Conlon's body the whacking bat fell, since the blow was in any case accumulative to Ivan's blows and their results, which Rolando saw. As indicated, however, the probabilities appear to be, and the jury could find, that the blow was to Conlon's head and, further, was a severely damaging blow. On the whole case, the jury could find Rolando guilty of three of the offenses charged on both an individual and a joint-enterprise basis.

Individual guilt: There was enough to justify a jury in convicting of assault and battery by means of a dangerous weapon — a baseball bat used in a dangerous way. See *Commonwealth* v. *Appleby,* 380 Mass. 296, 308 (1980); *Commonwealth* v. *Davis,* 10 Mass. App. Ct. 190, 192-193 (1980). Regarding the mayhem charge, the jury could find the weapon was applied to a person already seen to be beaten senseless. An intent to maim or disfigure could readily be inferred; the purpose was furthered by the defendant and was surely achieved. See *Commonwealth* v. *Farrell,* 322 Mass. 606, 618-619 (1948); *Commonwealth* v. *LeBlanc,* 11 Mass. App. Ct. 960, 960-961 (1981). See also *Commonwealth* v. *Hogan,* 7 Mass. App. Ct. 236, 244, *S.C.,* 379 Mass. 190 (1979). As to armed assault with intent to kill, the jury could look to all the circumstances, see *Commonwealth* v. *Reynolds,* 120 Mass. 190, 197-198 (1876); *Commonwealth* v. *Henson,* 394 Mass. 584, 591 (1985):

---

[3] Valstyn's girlfriend, who had been standing next to him at 19 Bradley Road, began to scream; he turned to help her into the building. As he turned back seconds later, he saw one of the Mercados throw the bat into the trunk. Then the pair drove off.

Shaughnessy, after witnessing Ivan's first two blows, turned and went into the house to summon the police.

here was Conlon with a nice prospect of dying which this defendant acted to hasten; wounds were repeated and serious, with large blood loss, repeated hospitalizations, difficult surgery, and lasting injuries. See *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 5-6 (1986); *Commonwealth* v. *Shea,* 398 Mass. 264, 270 (1986); *Commonwealth* v. *Fidler,* 23 Mass. App. Ct. 506, 515 (1987).

Complicity: In the particular case, it requires but a small shift of emphasis to find guilt of the foregoing crimes on a basis of joint venture. Of course this is not an instance of partners deliberating in advance to commit a crime, with subsequent acts rendering each responsible for the other's conduct as well as his own. But, whether from the time of Ivan's entry into the fray,[4] or from the moment of the approximate coincidence of Rolando's kick and Ivan's third swing of the bat, to the time of the joint flight from the scene, we have an identity of purpose and a common endeavor, symbolized by the passing of the bat, which could be found to constitute a criminal joint venture. Similarly, in *Commonwealth* v. *Fidler, supra,* the defendant Fidler and others fell upon three persons on a deserted street at night. As the assault appeared coordinated, some prior planning might have occurred, but we did not rely on that possibility. It was appropriate, nevertheless, to charge Fidler with the acts of the others; we affirmed convictions for assault and battery by means of a dangerous weapon and armed assault with intent to kill, saying: "There are cases where such liability [in joint venture] arises without prior planning or agreement. So it has been held enough that at the climactic moments the parties consciously acted together in carrying out the criminal endeavor, each thereby becoming responsible for the acts of the others. An element of mutual assent at those moments no doubt there is, but there need not have been an anticipatory compact." 23 Mass. App. Ct. at 513.[5] Near the present case is *Commonwealth* v.

---

[4] We note that the judge instructed on self-defense and defense of a third person, but the verdicts indicate that the jury were unmoved.

[5] Supporting citations were: *Brown* v. *Perkins,* 1 Allen 89, 96-98 (1861); *Commonwealth* v. *Morrow,* 363 Mass. 601, 608-609 (1973); *Commonwealth* v. *Ferguson,* 365 Mass. 1, 8-9 (1974).

*Sinnott,* 399 Mass. 863 (1987), where, during an argument about a drug purchase, one defendant began to punch the victim, the other then joined in the assault, and the victim was beaten to death. The court, untroubled by the absence of prior agreement, said, "We have often held that facts such as these permit an inference of the mental state required for conviction on a theory of joint venture." *Id.* at 881-882. See also *Commonwealth* v. *Morrow,* 363 Mass. 601, 608-609 (1973).[6]

We have spoken of all but the conviction of assault and battery which counts on a "shod foot" as a dangerous weapon. As indicated above, there was proof that the defendant, after scrambling up, kicked Conlon. There was no direct evidence that his foot was "shod," but if that may be inferred, we still have "[t]he essential question, when an object which is not dangerous per se is alleged to be a dangerous weapon," namely, "whether the object, as used by the defendant, is capable of producing serious bodily harm." *Commonwealth* v. *Marrero,* 19 Mass. App. Ct. 921, 922 (1984). Here the testimony (by Valstyn) was that the kick resembled a "nudge."[7] Although the matter may not be altogether clear, out of abundant caution we hold that the appeal from the shod foot conviction should succeed. See also *Commonwealth* v. *Appleby,* 380 Mass. at 304; *Commonwealth* v. *Davis,* 10 Mass. App. Ct. 190, 193 (1980).

3. *Defendant's contentions.* The defendant wrestles unavailingly with the facts. He makes little mention of the evidence offered on his behalf on the three main charges. This is understandable, for by and large the testimony of the witnesses on the part of the defendant was transparently weak; some of it was plainly invented for the occasion.[8] Criticizing the Common-

---

[6] In other jurisdictions, to like effect, see *Fuller* v. *State,* 43 Ala. App. 632, 637-638 (1966); *Bass* v. *State,* 172 So.2d 614, 617 (Fla. Dist. Ct. App. 1965); *People* v. *Richardson,* 32 Ill.2d 472, 477 (1965); *State* v. *Cantrell,* 1 Or. App. 454 (1970).

[7] See also note 2, *supra.*

[8] The defense called Rolando, his girlfriend Diane Maddon, and her sister Kathleen Maddon, both evidently present near the encounter. Kathleen's testimony seemed especially contrived. See also note 12, *infra.*

wealth's evidence, the defendant first says there was no proof he knew, before the incident began, that there was a bat in the trunk of the car. This is an irrelevancy. He asserts that, being pinned down by Conlon, he could not see what Ivan was doing, but that is unlikely on its face, and the jury could surely find otherwise. The defendant denies there was evidence that the bat, when wielded by him, actually landed on Conlon. Wilkins' testimony was to the contrary: he saw the bat strike Conlon's body, but could not say just where. The defendant hopes to discredit Wilkins because the preceding testimony by this witness varied in detail from the testimony of others,[9] but such evaluations (taking account, it may be, of the differing points of vantage of the witnesses, among other things) were for the jury. The defendant attempts to erect a bulkhead between Ivan's actions and his own, but in fact they coincided and connected. In his entire approach to the facts in this case, the defendant seems to ignore the settled propositions that witness credibility is for the jury, see *Commonwealth* v. *Clary,* 388 Mass. 583, 588-589 (1983); that evidence may be sufficient as against a motion for a required finding although there are elements in it that are inconsistent or contradictory, see *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 410-411 (1978); *Commonwealth* v. *Parker,* 389 Mass. 27, 31 (1983); and that inferences from particulars of the evidence which are "reasonable and possible," not "necessary or inescapable," may be accepted by a jury as collectively persuasive of guilt beyond a reasonable doubt, see *Commonwealth* v. *Beckett,* 373 Mass. 329, 341 (1977). To subscribe to the defendant's arguments would be to subvert the principle of *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979), by which intendments are to be made in favor of the Commonwealth when reviewing a denial of a required finding. See also *Commonwealth* v. *Burbank,* 388 Mass. 789, 797 (1983); *Commonwealth* v. *Davida,* 17 Mass. App. Ct. 511, 512 (1984).

---

[9] Wilkins saw Conlon standing in the street arguing with Rolando, and then saw Ivan hit Conlon from behind. Conlon fell into the street and Ivan hit him twice more before handing the bat to Rolando.

The defendant's objections taken to the judge's instructions are also untenable. The judge, charging at some length about joint venture, spoke consistently with such authority as *Commonwealth* v. *Soares,* 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979), that "one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime is guilty as a principal." See also *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197-198 (1968), cert. denied, 393 U.S. 1058 (1969); *Commonwealth* v. *Casale,* 381 Mass. 167, 173 (1980); *Commonwealth* v. *Champagne,* 399 Mass. 80, 86 (1987). The judge went on to say, in the sense of *Commonwealth* v. *Fidler, supra,* and other cases, that "a prearrangement of a pre-existing plan is not required." He was also quite correct in his further statement that the jury might "infer the necessary mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense." See *Commonwealth* v. *Soares,* 377 Mass. at 470; *Commonwealth* v. *Champagne,* 399 Mass. at 87.

There was objection to the judge's statement, rather rough-hewn yet sufficiently clear, that one could be "privy" to the intent and acts constituting the crime of mayhem and thus be found guilty of it. This instruction would be understood to refer to the extended charge on joint venture, and so was not unduly cryptic.

4. *Consciousness of guilt.* After talking that night with persons who had witnessed the incident, two Belmont police inspectors secured a warrant for the arrest of the defendant. Next day they went to the defendant's residence at 613 Park Street, in Roxbury, Boston, and found the brothers outside, near a car with a license number matching that of the car seen at 8 Bradley Road. Calling in Boston police officers, the Belmont inspectors arrested the defendant and asked Ivan to accompany them to the Belmont station to answer some questions. The inspectors then asked the two where they had put the baseball bat used to beat Conlon. Ivan denied knowledge of the bat or the incident. Thereupon the defendant made a like denial. When one of the inspectors indicated in Ivan's hearing that a

warrant would be secured to search the car, Ivan admitted he owned the car and opened the trunk, revealing a black aluminum bat.[10]

The judge charged in accordance with *Commonwealth* v. *Toney,* 385 Mass. 575, 585 (1982), that, if the jury found that a defendant made false statements of material fact or fled the scene, they might consider the matter on the question of consciousness of guilt, and might, but need not, consider it as a factor tending to prove guilt; but they were forbidden to convict the defendant on that evidence alone. The court had added in the *Toney* decision that, when requested, a trial judge should add by way of explanation that since there may be numerous reasons why an innocent person might flee, etc., such conduct does not necessarily reflect feelings of guilt; further, a person having feelings of guilt is not necessarily guilty in fact, for such feelings are sometimes found in innocent people. 385 Mass. at 585-586 n.6.[11]

Here the defendant requested the explanatory addendum but the judge did not give it. He should have done so. However, we do not think the omission was critical. The failure in a suitable case to give the basic charge may justify reversal of a conviction, see *Commonwealth* v. *Matos,* 394 Mass. 563, 566 (1985); *Commonwealth* v. *Rivera,* 23 Mass. App. Ct. 605, 610 (1987), but that has not been held as to the omission of the added remarks. Those remarks might perhaps have made the jury somewhat more suspicious of the probative value of the evidence, but by the main instruction they were properly warned against assigning undue weight to it. The significance of the omission is minimized by the fact that the defendant in his own testimony offered a reason why he made the denial — his brother Ivan had spoken first, and the defendant did not want to contradict him. Finally, although the prosecutor spoke of the false statement in her closing speech, we think the case

---

[10] Miranda warnings were properly and repeatedly given.

[11] That a judge should give the added charge on request was repeated in *Commonwealth* v. *Matos,* 394 Mass. 563, 566 (1985). Our court had used the word "must." 18 Mass. App. Ct. 212, 214-215 (1984). We take no particular point on the difference.

stood or fell on the basic evidence of the commission of the crimes charged, any corroboration by reason of the falsehood having no or negligible effect on the verdict even with the *Toney* charge left unembroidered. See *Commonwealth* v. *Sinnott*, 399 Mass. at 872-874.[12]

The judgment of conviction of assault and battery with a shod foot is reversed and the relevant verdict is set aside. The other judgments are affirmed.

*So ordered.*

---

[12] Far more influential with the jury than the admitted lie may have been the implausibility of defendant's testimony about the occurrence on May 6, including his statements that Ivan did not hit Conlon in the head, but in the back and legs; his inability to identify the black hat taken from Ivan's car as belonging to Ivan or as figuring in the incident; his statement that Conlon hit him repeatedly in the face leaving it "black and blue," although a police photograph taken on the day of the arrest and introduced in evidence showed no bruises of any kind.