NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

17-P-1140                                          Appeals Court

COMMONWEALTH  vs.  MICHAEL C. ROSA.

No. 17-P-1140.

Hampshire.     June 4, 2018. - November 9, 2018.

Present:  Rubin, Wendlandt, & Englander, JJ.

Assault and Battery by Means of a Dangerous Weapon.  Parent and
     Child, Discipline.  Child Abuse.

Complaint received and sworn to in the Northampton Division of the District Court Department on January 17, 2017.

The case was heard by William J. O'Grady, J.

Glynis Mac Veety for the defendant.
Caleb Weiner, Assistant District Attorney, for the Commonwealth.

WENDLANDT, J.  In this case, we apply the three-part framework for the parental privilege defense as set forth in Commonwealth v. Dorvil, 472 Mass. 1, 12-13 (2015).  Following a jury-waived trial, the defendant, Michael C. Rosa, was convicted of assault and battery by means of a dangerous weapon (shod

foot) against his five year old daughter.[1]  On appeal, the defendant argues that the Commonwealth presented insufficient evidence either to disprove his parental privilege defense beyond a reasonable doubt, or to prove that his shod foot qualified as a dangerous weapon.  We affirm.

Background.  We recite the facts as the judge could have found them, drawing all reasonable inferences in the light most favorable to the Commonwealth.  See id. at 3.  On the morning of January 17, 2017, the defendant was walking with his five year old daughter and two year old son in downtown Northampton.  As they headed to a local CVS store, according to the defendant, his daughter ran ahead and entered the store without him.  According to a CVS employee, the defendant entered the store with only one of his children, but it is unclear from her testimony whether the other child entered after the defendant or before.

In any event, the CVS employee testified that the first thing she remembered upon their entry into the store was the children running around the store and the defendant cursing and yelling at his daughter.  The defendant's daughter was laughing and hiding from the defendant.  While walking through the store, the defendant continued to yell obscenities at his daughter.

---

[1] He was acquitted of reckless endangerment of a child.

Eventually, the defendant's daughter, laughing, headed toward the store's front exit, where she encountered a CVS employee who said, "Whoa, hold on." The employee asked her what she was doing, and she responded, still laughing, that she was hiding from her father.

After approximately fifteen minutes in the store, the defendant stopped at a refrigerated case and picked up a bottle of iced coffee. While the defendant waited in line to pay, he saw his daughter by the front doors, hiding near the metal detectors. He did not pursue her, and she approached him. The subsequent interaction between the defendant and his daughter was captured by a video surveillance recording, and was also described at trial by the CVS employee.

The surveillance video footage and testimony of the CVS employee demonstrate that the defendant's daughter approached him and grabbed his legs. He shoved her in her chest with his hand, causing her to take a step or two to regain her balance. She then attempted to cling to his lower legs with her arms, and he once again shoved her away, this time causing her to step back two or three steps before falling down onto her buttocks; she immediately got back up. According to the CVS employee's testimony, the daughter reacted to this pushing in a playful manner but showed signs of becoming agitated.

The defendant then approached the counter to pay for his coffee. The CVS employee testified that, at this point, the defendant warned his daughter to stay away from him, telling her, "[G]et the fuck away from me. Trust me, you don't want to fucking be near me right now." His daughter came toward him again. In response, the defendant lifted his foot and kicked his daughter in the chest, knocking her to the ground and causing her and her brother to cry briefly.

The surveillance video shows that in response to the kick, the daughter stepped back, lost her balance, fell onto her bottom again, and remained there for approximately two seconds. After getting up, the daughter meandered around the area of the cash register as the defendant finished his purchase, at which point she left the store with the defendant and her brother.

The CVS employee called the police to report the incident, and two police officers stopped the defendant shortly thereafter. During the stop, Northampton police officer Brent Dzialo separated the defendant from his children and asked him why he had kicked his daughter in the chest. The defendant answered, "I don't raise pussies." The defendant acknowledged that he had used his foot to make contact with her chest and push her down but denied kicking her. Dzialo described the defendant's footwear (which was admitted in evidence) as "snow boot style boots/shoes." Dzialo also testified that the

defendant's daughter did not have any red marks, scratches, bruises, or other visible injuries, and therefore, he did not seek medical attention for her.

At the time of the incident, the defendant was approximately five feet, six inches tall, and weighed three hundred pounds. His daughter was approximately three feet tall, and weighed less than fifty pounds.

The defense at trial was that the defendant's conduct was protected by the parental privilege defense. The defendant denied kicking his daughter, claiming that he only "nudged" her. He stated that he was concerned about his "daughter getting kidnapped, missing." On cross-examination, he asserted that he had "tried to use other methods that didn't work," and that he "realized that the only way to get my daughter to stay by my side was to use a little reverse psychology." Later, however, he admitted that by the time he kicked her, he "wasn't in fear that she was going to be kidnapped," and he did not even "want her close by [to him]." Finally, he claimed that his comment to Dzialo -- that he kicked his daughter because "I don't raise pussies" -- was meant to convey that he did not want to raise his children to be victims of bullying.

The judge found the defendant guilty of assault and battery by means of a dangerous weapon, expressly crediting the CVS employee's testimony that the defendant "kicked [his] child in

the chest," and rejecting the defendant's testimony that he only nudged his daughter.

Discussion.  1.  Parental privilege defense.  The parental privilege defense seeks to balance two competing interests: (i) protection of the parental right to autonomy over the care and upbringing of children, and (ii) safeguarding children from punishment so excessive that it constitutes abuse.  See Dorvil, 472 Mass. at 12.  The privilege provides that no criminal liability will attach to a parent's use of force against his or her child as long as "(1) the force used against the minor child is reasonable; (2) the force is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and (3) the force used neither causes, nor creates a substantial risk of causing, physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress."  Id.  "[E]ach of the three prongs constitutes a question for the trier of fact."  Id. at 13.  See Commonwealth v. Packer, 88 Mass. App. Ct. 585, 594-595 (2015).  As is the case with other affirmative defenses, "the Commonwealth bears the burden of disproving at least one prong of the defense beyond a reasonable doubt."  Dorvil, 472 Mass. at 13.

Viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), the

evidence adduced at trial was sufficient to support the judge's finding that at least one of the parental discipline defense prongs was disproved beyond a reasonable doubt.  In evaluating the reasonableness of the force used (prong one) and of the relation of that force to a permissible parental purpose (prong two), the trier of fact should take into account a variety of factors, including "the child's 'age,' the 'physical and mental condition of the child,' and 'the nature of [the child's] offense,'" among others.  Dorvil, 472 Mass. at 13, quoting Restatement (Second) of Torts § 150 (1965).

Here, there was sufficient evidence for the judge to find the Commonwealth had met its burden with regard to prong two, rejecting the defendant's stated legitimate purpose for his conduct.[2]  See, e.g., id. (looking at defendant's stated reason for spanking child).  At trial, the defendant justified his action on the ground that he was afraid his daughter might be kidnapped or go missing.  Prior to the kick, however, the defendant's daughter repeatedly attempted to stay by his side,

---

[2] The Commonwealth argues that the defendant's extensive use of profanity alone defeats the parental privilege defense.  We disagree.  The Supreme Judicial Court has expressly rejected the argument that the availability of the defense hinges on the parent's emotional state.  See Dorvil, 472 Mass. at 14 (declining to consider evidence that defendant was angry while using force because "[t]he view under which the availability of the parental privilege defense hinges on a parent's subjective state, however, finds scant support in modern law, and we reject it").

only to have the defendant shove her away twice and warn her to get "the fuck away from [him]." Indeed, the defendant admitted at trial that, by the time he kicked her, he no longer feared she would be kidnapped and did not even "want her close by." In light of the defendant's admission that his purportedly legitimate parental purpose was a pretext, the judge could reasonably have found that the defendant's decision to kick his daughter was wholly unrelated to the purpose of safeguarding or promoting the welfare of the minor. Cf. Commonwealth v. Grassie, 476 Mass. 202, 210 (2017) ("Commonwealth may establish the absence of proper use of self-defense by proving beyond a reasonable doubt [that] . . . the defendant did not actually believe that he was in immediate danger of death or serious bodily harm from which he could have saved himself only by using deadly force").

Moreover, prior to the trial, the defendant provided a different explanation for his conduct, stating that he kicked his daughter because "I don't raise pussies." At trial, he explained: "I mean that, in society today, there's a lot of children being bullied in schools and I'm not going to raise my children to be victims." Certainly, the judge could also reasonably have found that the defendant's shifting rationale for the kick belied his assertion that the kick related to a legitimate purpose of safeguarding or promoting the welfare of

the minor.  Here, the judge expressly found the defendant not to be credible, instead crediting the testimony of the CVS employee that the defendant kicked the daughter in the chest and finding the defendant's testimony that he merely nudged her not credible.  See Commonwealth v. Bousquet, 407 Mass. 854, 861-862 (1990) ("[T]he question was one of credibility for the finder of fact and we shall not substitute our judgment for that of the trial judge").

Because the evidence was sufficient to allow the judge to find that the Commonwealth met its burden to disprove prong two of the defendant's parental privilege defense, we need not address either prong one[3] or prong three.  See Commonwealth v. Dobson, 92 Mass. App. Ct. 355, 359 (2017).  The privilege is available only if the force used is both reasonable and reasonably related to a legitimate parental purpose.[4]  See Dorvil, 472 Mass. at 12-13 ("By requiring that the force be reasonable and reasonably related to a legitimate purpose, this

---

[3] Though we need not reach the issue, there was also sufficient evidence to support the finding that the Commonwealth met its burden of disproving under Dorvil's first prong that "the force used against the minor child [was] reasonable." Dorvil, 472 Mass. at 12.

[4] Prong three additionally specifies "certain types of force that are invariably unreasonable," clarifying the meaning of the reasonableness standard and providing guidance to courts and parents. Dorvil, 472 Mass. at 13.  The Commonwealth concedes that it did not meet its burden with regard to prong three.

approach effectively balances respect for parental decisions regarding the care and upbringing of minor children with the Commonwealth's compelling interest in protecting children against abuse").  As the Supreme Judicial Court has held, the Commonwealth may overcome the defense by "disproving at least one prong of the defense beyond a reasonable doubt" (emphasis supplied).  Id. at 13.  Significantly, the privilege is based on the special role parents play in the rearing of their children and is founded on a recognition that "we must guard against the imposition of criminal sanctions for the use of parenting techniques still widely regarded as permissible and warranted."  Id. at 9.  Parenting is essential to the reason underlying the privilege, and that aspect of the privilege is embodied in prong two.  Accordingly, where, as here, the Commonwealth provides evidence sufficient to find that the defendant's supposedly legitimate parenting purpose is false, there is sufficient evidence to sustain its burden.

2.  Sufficiency of the evidence of use of shod foot as a dangerous weapon.  The defendant additionally maintains that his assault and battery by means of a dangerous weapon conviction should be reversed because the Commonwealth presented insufficient evidence to prove that his boot qualified as a dangerous weapon.  Where an object that is not dangerous per se (such as a boot) is alleged to be a dangerous weapon, the

question is "whether the object, as used by the defendant, is capable of producing serious bodily harm."  Commonwealth v. Tevlin, 433 Mass. 305, 310 (2001), quoting Commonwealth v. Mercado, 24 Mass. App. Ct. 391, 397 (1987).  "Resolution of these questions is invariably for the fact finder . . . and involves not only consideration of any evidence as to the nature and specific features of the object but also attention to the circumstances surrounding the assault and the use of the object, and the manner in which it was handled or controlled." Commonwealth v. Marrero, 19 Mass. App. Ct. 921, 922 (1984).

Here, the evidence demonstrated that the defendant used his snow boot to kick -- not to push -- his five year old daughter in the chest with sufficient force to knock her down onto the ground.  See id. ("Footwear, such as a shoe, when used to kick, can be a dangerous weapon").  As set forth supra, the judge specifically discredited the defendant's testimony that he only nudged his daughter.[5]  Cf. Mercado, 24 Mass. App. Ct. at 397

---

[5] The judge found the defendant not guilty of reckless endangerment of a child, explaining, "I have to agree with defense counsel that, at least with respect to the elements that require the Commonwealth to prove that the defendant engaged in conduct which created a substantial and unjustifiable risk of serious bodily injury was not met."  The elements of reckless endangerment of a child under G. L. c. 265, § 13 L, are "(i) a child under eighteen; (ii) a substantial risk of serious bodily injury . . . ; (iii) the defendant wantonly or recklessly engaged in conduct that created this substantial risk, or failed to take reasonable steps to alleviate such risk where there is a duty to act."  Commonwealth v. Figueroa, 83 Mass. App. Ct. 251,

(insufficient evidence that shod foot was dangerous weapon where shod foot was only used to "nudge" the victim). Viewing this evidence in the light most favorable to the Commonwealth, see Latimore, 378 Mass. at 676-677, a reasonable trier of fact could have concluded that the defendant used his boot in a manner that created the possibility of serious harm to his daughter. See Commonwealth v. Charles, 57 Mass. App. Ct. 595, 599 (2003) (kicking was "not so minimal as to foreclose an inference that the shod feet of the defendants were being used as dangerous weapons").

3. Probation. The judge sentenced the defendant to two and one-half years in the house of correction with six months to be served, the balance suspended for five years, and probation for the duration of the five-year suspended sentence. The

---

258 (2013). We disagree with the defendant that the judge's statement (which apparently relates at least to the third element of reckless endangerment concerning the defendant's mental state) is irreconcilable with the finding that the defendant -- who was five feet, six inches tall and weighed 300 pounds, and used his snow boot to kick his five year old daughter, who was three feet tall and weighed less than 50 pounds, in the chest -- employed his shod foot as an object "capable of producing serious bodily harm." Tevlin, 433 Mass. at 310, quoting Mercado, 24 Mass. App. Ct. at 397. Cf. Commonwealth v. Coggeshall, 473 Mass. 665, 668 (2016), quoting Commonwealth v. Hendricks, 452 Mass. 97, 103 (2008) ("substantial risk" of serious bodily injury in context of reckless endangerment of child means "a good deal more than a possibility"). The judge expressly stated: "I do credit the testimony that you kicked your child in the chest. You didn't nudge your child in the chest . . . ."

defendant contends that the five-year term of probation was an illegal sentence because it was longer than the two and one-half year maximum imprisonment sentence for assault and battery by means of a dangerous weapon.[6]  See G. L. c. 265, § 15 A (b).  However, the probation statute, G. L. c. 276, § 87, permits a judge to place a defendant on probation for a length of time exceeding the offense's maximum sentence of imprisonment.  See Commonwealth v. Powers, 73 Mass. App. Ct. 186, 188 (2008).

Judgment affirmed.

---

[6] The defendant also maintains that the probation condition that he "comply with all DCF [Department of Children and Families] requirements regarding the custody of [his] children" impermissibly interferes with the "province of the Probate and Family Court or the Juvenile Court."  However, he cites to no conflicting order of these courts.  Accordingly, the argument is unavailing.

RUBIN, J. (concurring). The defendant kicked his five year old daughter in the chest and was charged with assault and battery by means of a dangerous weapon, to wit, his shod foot. He did not argue that his conduct, although wrongful, was justified under the theory of necessity or "competing harms." "In essence, the 'competing harms' defense exonerates one who commits a crime under the 'pressure of circumstances' if the harm that would have resulted from compliance with the law significantly exceeds the harm actually resulting from the defendant's violation of the law. At its root is an appreciation that there may be circumstances where the value protected by the law is, as a matter of public policy, eclipsed by a superseding value which makes it inappropriate and unjust to apply the usual criminal rule. See generally LaFave & Scott, Criminal Law § 50 (1972); Arnolds & Garland, The Defense of Necessity in Criminal Law: The Right to Choose the Lesser Evil, 65 J. Crim. L. & Criminology 289, 291-296 (1974)." Commonwealth v. Brugmann, 13 Mass. App. Ct. 373, 376-377 (1982). Rather, the defendant argued that he was entitled to kick his child because of the parental discipline privilege, which is the "privilege to use reasonable force in disciplining a minor child," under which "a parent or guardian may not be subjected to criminal liability for the use of force against a minor child under the care and supervision of the parent or guardian, provided that (1) the

force used against the minor child is reasonable; (2) the force is reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and (3) the force used neither causes, nor creates a substantial risk of causing, physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress." Commonwealth v. Dorvil, 472 Mass. 1, 8, 12 (2015). As the Supreme Judicial Court has explained, "[a]s with other affirmative defenses, where the parental privilege defense is properly before the trier of fact, the Commonwealth bears the burden of disproving at least one prong of the defense beyond a reasonable doubt." Id. at 13.

I join the court's opinion rejecting the defendant's claim on the ground that the Commonwealth has provided sufficient evidence to disprove beyond a reasonable doubt the second prong of that privilege as defined by the Supreme Judicial Court's decision in Dorvil, 472 Mass. at 12. With respect to the first prong, I agree with my brother Englander that "the CVS employee's testimony that the defendant 'lifted his foot' and 'kicked' his five year old daughter 'in the chest' is sufficient evidence" to support a finding by the judge beyond a reasonable doubt of the use of "unreasonable force," post at    . I therefore also conclude -- and note that the panel thus

unanimously holds -- that the defendant's conviction of assault and battery by means of a dangerous weapon (shod foot) must also be affirmed, independently of the holding of the majority opinion with respect to Dorvil's second prong, on the ground that the Commonwealth met its burden of disproving under Dorvil's first prong that the "the force used against the minor child [was] reasonable."  Id.

As to the third prong, although kicking a child might be necessary to avoid injury or death such that it might in some circumstance be justified under the necessity or competing harms defense, because kicking a child always "creates a substantial risk of . . . physical harm (beyond fleeting pain or minor, transient marks), gross degradation, or severe mental distress," Dorvil, supra at 12, I am of the view that prong three means that kicking a child cannot be justified under the parental discipline privilege.  Put another way, I conclude that the parental privilege does not include the right to discipline a child by kicking her.

This is consistent with the reasoning underlying the Supreme Judicial Court's recognition of the parental discipline privilege.  That court noted that, because "substantial majorities of parents continue to say that spanking is sometimes necessary to discipline children, . . . the long-standing and widespread acceptance of such punishment remains firmly woven

into our nation's social fabric.  It follows that we must guard against the imposition of criminal sanctions for the use of parenting techniques still widely regarded as permissible and warranted."  Id. at 9.

While this accurately describes spanking, the practice of kicking one's child as a method of discipline is of course not firmly woven into our nation's social fabric, nor is it widely regarded as permissible and warranted.  Indeed, our society abhors kicking even a dog, never mind a child.

Consistent with the physical risk involved in kicking a child, as well as society's understanding of its degrading nature, several states that allow parents to utilize corporal punishment on their children for purposes of discipline nonetheless explicitly treat kicking a child as beyond, or presumptively beyond, the scope of the privilege.  Under Delaware's law creating a parental discipline privilege, for example, "force shall not be justified if it includes, but is not limited to, any of the following:  Throwing the child, kicking, burning, cutting, . . . [or] striking with a closed fist" (emphasis supplied).  Del. Code Ann. tit. 11, § 468(1)a (2018).  That statute makes clear that this is because the listed acts, including kicking a child, are "likely to cause or do[] cause physical injury, disfigurement, mental distress, unnecessary degradation or substantial risk of serious physical

injury or death."  Del. Code Ann. tit. 11, § 468(1)c.  These are essentially the factors articulated by our Supreme Judicial Court in Dorvil, 472 Mass. at 12, that render otherwise permissible conduct outside the privilege under prong three.

Because of these factors, and given the instruction in Dorvil that where there is doubt "the balance will tip in favor of the protection of children from abuse inflicted in the guise of discipline," id. at 15, which I take to mean that the law of the Commonwealth is to be as protective of the dignity of children and their right as human beings to be protected from violence as is consistent with allowing parents to discipline their children using "parenting techniques still widely regarded as permissible and warranted," I conclude that, under the third prong of Dorvil, kicking a child may not be justified as a lawful way of disciplining her.  Rather, such kicking can be justified on the basis that it is undertaken in order to further the welfare of the child only in circumstances where it is done as a matter of necessity under the "competing harms" defense.

ENGLANDER, J. (concurring).  I concur in the court's affirmance of the conviction, but for reasons different than the majority opinion.  As this case shows, the cases in this area can be difficult -- where the courts are asked to apply the laws of criminal assault in the context of the parent-child relationship, and where the law provides that a parent may use reasonable force to discipline one's child.  I write separately to make three points.

First, I would rest the affirmance on prong one of the standard articulated in Commonwealth v. Dorvil, 472 Mass. 1, 12 (2015), and conclude that there was sufficient evidence of unreasonable force here.  Specifically, the CVS employee's testimony that the defendant "lifted his foot" and "kicked" his five year old daughter "in the chest" is sufficient evidence of unreasonable force under the standard of review of Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1978).

That said, however, it is worth noting that the evidence of unreasonable force here was thin.  Indeed, the majority does not rest its analysis on prong one.  See ante at    .  The child was uninjured.  She went down on her behind, but got up immediately.  There was no further evidence presented as to the force of the "kick," just the characterization itself.  There was no evidence as to whether the defendant extended his leg with any velocity, or merely pushed the child back.  The surveillance video does

not show this.  When asked at oral argument, the Commonwealth

could cite no other case, from any jurisdiction, where a parent

had been convicted of assault and battery on their child upon a

comparable showing of force, with no injury.[1,2]

Second, I disagree with the majority over prong two of the

Dorvil standard, although my disagreement is more with the

standard itself than its application here.  Prong two asks

whether "the force is reasonably related to the purpose of

safeguarding or promoting the welfare of the minor, including

the prevention or punishment of the minor's misconduct."

Dorvil, 472 Mass. at 12.  This is the prong on which the

majority rests its decision.  See ante at     .  The majority

concludes that the parental privilege is overcome because, in

its view, there was sufficient evidence to conclude that what

---

[1] As the majority notes, the trial judge found the defendant
"not guilty" of reckless endangerment, and in doing so expressly
found that the defendant did not "engage[] in conduct which
created a substantial and unjustifiable risk of serious bodily
injury . . . ."

[2] Our case law is not yet very developed as to what force
can qualify as "unreasonable."  Dorvil, 472 Mass. at 3, 13,
holds that "smacking [a] child on the [clothed] buttocks" -- a
spank, if you will -- falls within the parental privilege.
Commonwealth v. Dobson, 92 Mass. App. Ct. 355, 357-359 (2017),
on the other hand, involved the striking of a child in the face
with a belt, such that it left a mark, which was sufficient
evidence of unreasonable force to overcome the privilege.  This
case falls between those fact patterns.

this father did was not reasonably related to "prevention . . . of the [child's] misconduct."  Ante at    .

I am troubled by the prong two requirement.  Under prong one, a parent asserting the parental privilege must already show that any force he or she used on the child was "reasonable."  Prong two asks a different question, and it is whether the parent has also shown that the force used was reasonable discipline -- that is, that the force was reasonable for the purpose of promoting the welfare of the child, including the prevention or punishment of misconduct.  See Dorvil, 472 Mass. at 12.  The prong two requirement thus sets up the possibility that a parent will have shown that the force used was reasonable under prong one, but nevertheless is convicted of assault because (in the fact finder's judgment) the parent's reasonable force was not reasonably related to disciplining the child.

Viewed in this light, the second prong can be understood as an invitation to pass judgment on how a parent has chosen to parent.  In my view, the courts should tread lightly in this area.  Whether discipline is required, and how to render it effectively, are complex questions that vary greatly from child to child, year to year, moment to moment.  The law should give substantial leeway to parents to make those judgments, and it should allow for a range of differences in parenting philosophy, as well.  I do not think the parental privilege should be

overcome solely because the fact finder concludes that the parent's use of force, although reasonable, did not meet its view of what was appropriate discipline.

This case illustrates the issue. There was objective evidence that the child was misbehaving, and was in need of control. She had traveled ahead of her father in a downtown area. She later started to leave the CVS building alone, heading for a downtown street. She was uncontrolled for fifteen minutes or more. The majority nevertheless concludes that there was sufficient evidence to find that the discipline the father employed was inappropriate -- not "reasonably related to . . . prevention or punishment of the [child's] misconduct." Ante at . In accordance with prong two, however, the majority's analysis does not rest on the nature of the force used, but rather rests on the evidence of how the father explained his actions. In this way the courts become involved, unnecessarily in my view, in evaluating the parent's judgment about how to discipline their child. [3]

---

[3] The majority points out that the privilege derives from parenting, and thus the use of force must be shown to be related to parenting (hence, prong two). Perhaps, but I am not sure why the requirement of "reasonable" force in prong one does not serve that purpose. By using the word "reasonable" in both prong one and prong two, the standard sets up two separate requirements, and invites a separate evaluation whether the force used was appropriate as discipline. See Dorvil, 472 Mass. at 12-13. The requirement also gives rise to the risk --

Third, I note that the Commonwealth's evidence and argument in this case focused unduly on what the defendant said to his child, rather than what he did. The testimony emphasized that the defendant was loud, profane, and offensive, and that he swore directly at his young children. The prosecutor carried this theme into closing, and indeed spent the bulk of his time on it.[4]

There are two problems with the prosecutor's emphasis on the defendant's speech. The first is that the prosecutor employed it to argue that the defendant was angry, but the court in Dorvil specifically held that the parental privilege defense does not hinge on the parent's subjective state of mind, including whether the parent acted out of anger. See Dorvil, 472 Mass. at 13-14. Accord Commonwealth v. Packer, 88 Mass. App. Ct. 585, 593-594 (2015). The second problem is that the offensiveness of the defendant's speech is not relevant to a prosecution for assault and battery with a dangerous weapon. While what the defendant said may be relevant to certain elements of the parental privilege defense, the fact that what

---

inherent in the standard -- that less articulate parents will have more difficulty justifying their actions.

[4] For example, the prosecutor argued: "[F]rom the moment he gets in, . . . he's screaming and shouting obscenities at a five year old child," and "[H]e's saying things like 'Get the fuck away from me.' How in the world is that reasonable . . . ?"

he said was offensive, was not.  See, e.g., <u>Cohen</u> v. <u>California</u>, 403 U.S. 15, 18-26 (1971) (defendant could not be criminally prosecuted for wearing T-shirt saying "Fuck the Draft").

   With the foregoing reservations, I concur in the affirmance.[5]

---

[5] The conduct at issue might be more effectively addressed by the Department of Children and Families, rather than by the criminal laws.