COMMONWEALTH *vs.* DANA CHARLES
(and seven companion cases[1]).

No. 99-P-1555.

Suffolk. January 22, 2003. - March 19, 2003.

Present: DOERFER, KASS, & McHUGH, JJ.

*Armed Assault with Intent to Murder. Assault and Battery by Means of a Dangerous Weapon. Firearms. Joint Enterprise. Evidence,* Joint venturer, Relevancy and materiality. *Dangerous Weapon. Practice, Criminal,* Instructions to jury, Disclosure of evidence.

At the trial of indictments charging the defendants with armed assault with intent to murder on a theory of joint venture, the judge erred in failing to instruct the jury that they were required to find that each defendant knew before the shooting that an accomplice had a gun; moreover, this error was not rendered harmless by the fact that the judge correctly charged the jury on joint venture liability for carrying a firearm, where that charge did not elaborate as to precisely when the defendants needed to know that the other was carrying a firearm, and thus was broad enough to permit the jury to convict the defendants on the handgun possession charge even if their knowledge arose too late to make them joint venturers in the shooter's assault with intent to murder. [597-599]

The evidence at the trial of indictments alleging assault and battery by means of a dangerous weapon, a shod foot, was sufficient to withstand the defendants' motions for required findings of not guilty, where the kicking involved was not so minimal as to foreclose an inference that the shod feet of the defendants were being used as dangerous weapons, and where there was evidence that the attack was the fulfilment of a promise to do serious harm to the victim. [599]

This court declined to consider whether there was any material prejudice to two criminal defendants arising from the Commonwealth's inexcusable failure to turn over to the defendants evidence that the victim had elaborated on his statement to the police, where the court had ordered a new trial on other grounds. [599-600]

The judge at a criminal trial did not err in admitting in evidence relevant testimony regarding the gang affiliation of some of the participants in the incident at issue; moreover, the judge did not abuse his discretion in admitting in evidence testimony from some witnesses that they did not wish to reveal where they lived or worked, where the judge instructed the jury not to draw any adverse inferences from such testimony. [600]

[1]Three of the cases are against Dana Charles, and four are against Geoffrey Terry.

INDICTMENTS found and returned in the Superior Court Department on September 8, 1995.

The cases were tried before *Thomas E. Connolly*, J., and an amended motion for a new trial, filed on March 1, 2001, was heard by him.

*Claudia Leis Bolgen* for Dana Charles.

*Dennis M. Powers* for Geoffrey Terry.

*Kajal K. Chattopadhyay*, Assistant District Attorney, for the Commonwealth.

DOERFER, J. The defendants were convicted as joint venturers on indictments alleging armed assault with intent to murder.[2] The victim was shot by another person in an incident that unfolded at the Ruggles Street subway station in Boston. The judge's instruction to the jury on the elements of joint venture did not refer to the requirement that the defendants knew the shooter was armed. We must reverse.

1. *Facts*.[3] The victim, Horacio Mays, was at the Ruggles Street station on the late afternoon of August 11, 1995, with his girlfriend Rhonneka Tavares. Their one year old daughter was also with them. They were meeting at the station because Mays had reason to believe that it was not safe for him to be seen at the housing project where Tavares lived. He knew he was suspected of shooting another man, Buford, and that the friends of Buford were out looking for Mays to do him harm. Mays, Buford, and the defendant Terry had at one time all been members of a gang known as the Ruggles Street Tarheels, although Mays had left the gang some months before. The defendant Charles and Mays had grown up together at the Ruggles Street housing project.

After Mays and Tavares had been talking for about an hour at the station, they were approached from different directions by

---

[2]The defendants were also convicted on indictments charging each with: two counts of assault and battery by means of a dangerous weapon ([1] a shod foot and [2] a handgun); assault and battery; unlawful possession of a handgun; and unlawful possession of ammunition. The assault and battery and unlawful possession of ammunition convictions were placed on file with the defendants' consent and are not before us. Their convictions on the other indictments are reviewed separately herein.

[3]We refer to the evidence taken in the light most favorable to the Commonwealth.

the defendants and Ellis McClain, with whom Mays had also grown up at the Ruggles Street housing project. The conversation that ensued was not pleasant. The three men accused Mays of having shot Buford. They asked him (rhetorically, no doubt) why he had done such a thing, discounted his denials, and then vowed to "fuck him up." One said that they would not do it just then because Mays had his infant child and girlfriend with him.

The three men then walked over to a fourth man standing by a pillar and had a conversation with him. Mays, now carrying the infant, and Tavares started to move away. The defendants (but not McClain) returned. The defendant Charles came up to Mays's side and punched him in the jaw. The defendant Terry then came up and hit Mays in the face. Tavares grabbed the baby and ran. Mays fell to the floor. Terry, who had shoes on, kicked Mays in the back. Charles, who also had shoes on, kicked Mays three times in the legs.

The tables then turned. Mays got up, pulled a knife, and started to chase the defendants. The defendants ran directly to the fourth man, not too far away, who pulled out a handgun.[4] Mays did an about face and started to run away. The fourth man shot him several times in the back.

2. *Jury instruction on joint venture.*[5] On this evidence, the judge was required to instruct the jury on joint venture, as it applied to the charge of armed assault with intent to murder, that the jury must find that each defendant knew before the shooting began that the fourth man had a gun. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 111 (1994); *Commonwealth* v. *Melendez*, 427 Mass. 214, 215-216 (1998). See also *Commonwealth* v. *Mills*, 436 Mass. 387, 398 (2002).[6]

---

[4]There was an issue at trial as to how visible the handgun was.

[5]The defendants raise as a separate issue the sufficiency of the evidence of joint venture as applied to the charges of armed assault with intent to murder, assault and battery by means of a dangerous weapon (handgun), possession of a firearm and possession of ammunition. From the recital of the evidence favorable to the Commonwealth, it is clear that the evidence was sufficient on these points.

[6]Terry's written request for the correct instruction was not allowed. The judge, notwithstanding the request of Terry after the charge, declined to amend his charge to include the correct instruction.

At oral argument, the Commonwealth admitted that the charge was deficient and that Terry had lodged an objection, but argued that the error was harmless[7] because the judge did charge correctly on joint venture liability for carrying a firearm.[8] The Commonwealth argues that the jury convicted the defendants on these indictments and, therefore, the jury must have found as a fact that the defendants knew that the fourth man was armed.

It is not reasonable to conclude that the jury would understand that knowledge of possession of the gun was required for joint venture liability on the armed assault with intent to murder charge just because they were told such knowledge was required on the firearms charge. In fact, the opposite inference is just as likely: the failure to mention this requirement could lead the jury to believe that such knowledge was not required on the armed assault with intent to murder charge and that they were authorized to convict the defendants on that charge without deliberating on whether the defendants knew about the weapon before the shooting.

The charge on joint venture possession of a firearm did not elaborate as to precisely when the defendants needed to know

[7]As to Terry, the standard of review is harmless error under *Commonwealth v. Federico*, 425 Mass. 844, 852-853 (1997). As to Charles, who did not raise a separate objection, see *Commonwealth v. Colon*, 52 Mass. App. Ct. 725, 730-731 (2001) (judge's failure to instruct jury on essential element of crime of armed robbery based on joint venture theory, in absence of objection, resulted in substantial risk of miscarriage of justice). In any event, it would be bizarre to apply different standards of review here to the two coventurers. The judge was on notice that a defendant objected to his charge. The facts were not different as to the culpability of the two defendants, and there was no tactical reason for one to request the charge and the other not. In these circumstances, it would be a miscarriage of justice to reverse one conviction but affirm the other merely because his counsel did not pipe up and say "me too."

[8]On the firearms charge, the judge instructed: "In order to prove the defendant guilty of this offense, the Commonwealth must prove three things beyond a reasonable doubt. One, that the defendant possessed a firearm, either individually or with a joint venturer, and that he had that firearm under his control; second, that the defendant possessed or had under his control — that the item met the legal definition of a firearm; and three, that the defendant knew that he possessed a firearm. . . . [T]he Commonwealth must prove beyond a reasonable doubt that the defendant knew that he possessed this item either himself or through a joint venturer and also knew that the item was a firearm . . . ."

that the fourth man was carrying a firearm. As given, the charge was broad enough to suggest that the defendants need only have known about the gun at some time during which the shooter was carrying it, even if they first gained their knowledge by seeing the shooter pull out the weapon and fire. The charge, in other words, was broad enough to permit the jury to convict the defendants on the handgun possession charge even if their knowledge arose too late to make them joint venturers in the shooter's assault with intent to murder.

3. *Sufficiency of the evidence of use of shod foot as dangerous weapon.* The judge properly denied the defendants' motions for required findings of not guilty on the indictments for assault and battery by means of a dangerous weapon, a shod foot. There was evidence that both defendants were wearing shoes. The kicking described in the evidence was not so minimal as to foreclose an inference that the shod feet of the defendants were being used as dangerous weapons. Contrast *Commonwealth* v. *Mercado*, 24 Mass. App. Ct. 391, 397 (1987) (insufficient evidence where use of shod foot was no more than a nudge). There was, in addition, evidence that the attack was the fulfilment of a promise to do serious harm to the victim. There was adequate evidence to permit the jury to infer beyond a reasonable doubt that the victim was kicked with shod feet in a manner which was capable of causing serious bodily injury. See *Commonwealth* v. *Fernandez*, 43 Mass. App. Ct. 313, 315 (1997).

4. *Other issues.*[9] We touch briefly on other issues that are not likely to remain as problems on retrial.

a. *Failure to make discovery.* The Commonwealth failed to make a supplemental disclosure to the defendants that the victim had elaborated on his statement to the police and would specifically state that he saw the defendants speaking to the shooter before they returned to the victim and initiated their physically aggressive encounter. It was plainly the duty of the Commonwealth to provide that important evidence as soon as the

[9]As mentioned, *supra*, the evidence was sufficient to withstand motions for required findings of not guilty on all indictments. Since there will be a new trial, we do not consider other arguments made in connection with the denial of the defendants' motions for new trial.

victim had added it to his story. Even though the failure to turn over the new statement was inexcusable, we need not consider whether there was any material prejudice to the defendant. See, e.g., *Commonwealth* v. *Hamilton*, 426 Mass. 67, 70 (1997); *Commonwealth* v. *Stote*, 433 Mass. 19, 22 (2000). As seen above, there are adequate independent grounds for granting a new trial.

b. *Gang affiliation and expressions of fear by witnesses.* The gang affiliation of some of the participants in this melee was germane to the issues. There was no error in admitting that evidence. See *Commonwealth* v. *Maldonado*, 429 Mass. 502, 504 (1999). Also, the testimony of some witnesses that they did not wish to reveal where they lived or worked did not unduly prejudice the defendants. There was no abuse of discretion in receiving it in evidence. See *Commonwealth* v. *Auguste*, 418 Mass. 643, 647-648 (1994). The judge instructed the jury not to draw any adverse inferences from such testimony.

5. *Conclusion.* For the foregoing reasons, we vacate the judgments on the indictments for armed assault with intent to murder and assault and battery by means of a dangerous weapon (handgun). The judgments of conviction for assault and battery by means of a dangerous weapon (shod foot) and unlawful possession of a handgun are affirmed.

*So ordered.*