NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13132


COMMONWEALTH  vs.  AARON BOOKMAN.



Bristol.     May 1, 2023. – July 12, 2023.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


Homicide.  Firearms.  Evidence, Third-party culprit.  Practice,
    Criminal, Capital case, Instructions to jury, Harmless
    error.  Error, Harmless.  Constitutional Law, Harmless
    error.



Indictments found and returned in the Superior Court
Department on April 5, 2016.

The cases were tried before Renee P. Dupuis, J.


Michael Tumposky for the defendant.
Mary Lee, Assistant District Attorney, for the
Commonwealth.


GAZIANO, J.  After a joint trial with his codefendant,

Angel Acevedo, see Commonwealth v. Acevedo, 492 Mass.   (2023),

a Superior Court jury convicted the defendant, Aaron Bookman, of

deliberately premeditated murder in the first degree and

unlawful possession of a firearm.  In this direct appeal, he

presents issues also raised by the codefendant on appeal: first, whether the judge erred in excluding third-party culprit evidence demonstrating that the victim of the crime, and his associates, were armed and dealing drugs on the night of the fatal shooting; and second, whether this evidence also was admissible to cast doubt on the adequacy of the police investigation. See id. at    . Finally, the defendant asks this court to exercise its statutory authority pursuant to G. L. c. 278, § 33E, to grant him a new trial or to reduce the murder in the first degree conviction to a lesser degree of guilt. In a letter pursuant to Mass. R. A. P. 16 (l), as appearing in 481 Mass. 1628 (2019), the defendant raises an addition claim challenging his conviction of unlawful possession of a firearm due to the judge's failure to instruct the jury that the Commonwealth was required to prove an absence of licensure. See Commonwealth v. Guardado, 491 Mass. 666, 690, 693 (2023). For the following reasons, we affirm the defendant's convictions and decline to exercise our authority to grant extraordinary relief.

1. Facts. The facts are recited in Acevedo, 492 Mass. at    , and supplemented as necessary in our analysis.

2. Discussion. a. Third-party culprit and Bowden evidence. The defendant argues that the judge erroneously excluded evidence that police officers found illegal narcotics in the Mercedes sport utility vehicle (SUV) occupied by the

victim and in the victim's clothing.  This evidence was admissible, he contends, "to expose the role that New Bedford's drug trafficking trade may have played in the murder."  A new trial is required, he maintains, because the judge's ruling "deprived the defense of the plausible alternative theory that rival drug dealers committed the murder."

Prior to addressing the merits of the defendant's claim, we discuss whether he preserved this issue for appeal.  The Commonwealth filed motions in limine to exclude (1) evidence of drugs; (2) evidence of knives found in or near the SUV; and (3) third-party culprit evidence.  The codefendant filed oppositions to the Commonwealth's motion to exclude evidence of drugs and to restrict the defense of a third-party culprit.  See Acevedo, 492 Mass. at    .  The defendant did not file a responsive pleading to any of these motions in limine brought by the Commonwealth.

The codefendant's counsel took the laboring oar in the motion hearings.  He contended that evidence of drug dealing was admissible to prove that the occupants of the SUV "were leading a lifestyle that is not conducive to health."  If the victim or his friends were engaged actively in hostilities with rival drug dealers, the codefendant's counsel argued, this evidence would counter the Commonwealth's theory that the murder was motivated by gang rivalry.  The defendant's counsel, providing an equivocal response to excluding evidence of drugs and drug

dealing, stated, "Well, I think they should probably hear it. I can understand that a lot of it -- I don't see much of a connection." The judge ruled that evidence of drugs and drug dealing was not admissible "until such time the defendants establish that there's some relevance to this particular homicide."

The parties dispute whether defense counsel's statement that the jury "should probably" hear the evidence of the drugs recovered and that the occupants of the SUV were engaged in drug dealing, while discounting its probative value, preserved the issue for appeal. In general, counsel is required to object to preserve a claim for appellate review. See Commonwealth v. Whelton, 428 Mass. 24, 26 (1998); Mass. G. Evid. § 103(a)(1)(A) (2023). "A timely and precise objection not only preserves the aggrieved party's appellate rights but, more importantly, afford[s] the trial judge an opportunity to act promptly to remove from the jury's consideration evidence [or the effect of an initially improper ruling] which has no place in the trial" (quotation omitted). Commonwealth v. McDonagh, 480 Mass. 131, 137 (2018). Where an objection is raised, we review to determine "(1) was there error; and (2) if so, was that error prejudicial." Commonwealth v. Cruz, 445 Mass. 589, 591 (2005). At a murder trial, however, issues on which no objection is raised are reviewed for a substantial likelihood of a

miscarriage of justice.  Commonwealth v. Andre, 484 Mass. 403, 406 (2020).

In this case, it does not matter whether the defendant properly raised an objection because the codefendant's objection to the exclusion of the drug evidence preserved the issue for both defendants.  See Commonwealth v. DePina, 476 Mass. 614, 624 n.9 (2017) (in joint trial, codefendant's objection preserved issue also for defendant who did not object).  See also Commonwealth v. Robertson, 489 Mass. 226, 237, cert. denied, 143 S. Ct. 498 (2022) (codefendant objection preserves error for defendant where issue fairly was presented to judge in time to take appropriate action).  As the Appeals Court noted in Commonwealth v. Charles, 57 Mass. App. Ct. 595, 598 n.7 (2003), it would be "bizarre" to apply different standards of review to coventurers in a joint trial due to counsel's failure to "pipe up and say 'me too.'"  Accordingly, we review the defendant's claim for prejudicial error.

We addressed the identical third-party culprit issue in Acevedo, 492 Mass. at    .  In that opinion, we rejected the proposition that "a victim's status as a drug dealer, standing alone, provides a ready-made third-party culprit defense."  Id. at    .  Based on the codefendant's inadequate proffer, "the judge properly excluded the proffered third-party culprit evidence consisting of drug dealing by the occupants of the SUV,

and the drugs found in the SUV and the victim's clothing. There
was nothing more than rank speculation that the victim was shot
by an unnamed rival drug dealer as a consequence of leading an
unhealthy 'lifestyle.'" Id. See DePina, 476 Mass. at 630
(judge properly excluded speculative theory that unknown rival
drug dealers had motive to kill victim, in absence of any
further evidence). For the same reasons, the defendant is
unable to establish that the judge abused her discretion in
excluding evidence of drugs and drug dealing.

Similarly, the evidence was not admissible as part of a
Bowden defense. See Commonwealth v. Bowden, 379 Mass. 472, 485-
486 (1980). The defendant argues, on appeal, that he had a
right to confront any inadequacies in the police investigation
including the existence of "other enemies in the city." In
Acevedo, 492 Mass. at    , we explained that the "rival drug
dealer theory," which was "'no more than speculation and
conjecture,' did little to cast doubt on the adequacy of the
police investigation. [Commonwealth v. ]Martinez, 487 Mass.
[265,] 271 [(2021)]. 'It therefore did not have "sufficient
indicia of reliability"' to qualify as Bowden evidence (citation
omitted). Id."

Finally, we examine the defendant's contention that the
judge improperly excluded third-party culprit evidence
consisting of (1) knives found inside and near the SUV and (2)

crimes committed by the occupants of the SUV before and after the murder. The defendant did not raise either claim in the trial court. In fact, defense counsel conceded that the knives (found closed in a folded position) were not relevant to a third-party culprit defense. He stated: "There's no use [of the knives]. There's no flashing." Because the knives did not "point the finger of blame at another culprit," Acevedo, 492 Mass. at    , the exclusion of this evidence did not create a substantial likelihood of a miscarriage of justice.

The same is true for the defendant's contention that the judge improperly precluded evidence of "other adversaries" consisting of crimes committed by the surviving occupants of the SUV. The evidence, he claims, consisted of the following: Louis Class's arrest in 2013 for unlawful possession of a firearm and ammunition; Class's arrest in August 2016 for the stabbing murder of a teenager; Aaron Watkins's and Desmond Roderick's arrests for smuggling drugs into Martha's Vineyard; and Class's, Watkins's, and Roderick's incarcerated status at the time of trial. The defendant did not seek to admit evidence of Class's criminal history or the custody status of the victim's friends as third-party culprit evidence. The codefendant, for his part, merely argued that Class's charges were admissible to counter the Commonwealth's attempt to portray the occupants of the SUV as sympathetic crime victims. Acevedo,

492 Mass. at    n.6.  We noted, in Acevedo, that the codefendant "did not provide the judge with an adequate offer of proof establishing that Class's pending criminal charges were evidence that 'other adversaries' were responsible for the shooting."  Id.  Moreover, the jury understood that at least two occupants of the SUV were drug dealers and were incarcerated at the time of trial; the Commonwealth introduced evidence of recorded jail telephone calls between the codefendant and a friend discussing Watkins's and Roderick's arrests and sentences for a large Martha's Vineyard "drug bust."

b.  Unlawful possession of a firearm.  The defendant challenges his conviction of unlawful possession of a firearm, pursuant to G. L. c. 269, § 10 (a), based on the absence of a jury instruction requiring the Commonwealth to prove that the defendant did not have a valid license to possess a firearm.  Recently, in Guardado, 491 Mass. at 690, we held that "to convict a defendant of unlawful possession of a firearm, the Commonwealth must prove 'as an element of the crime charged' that the defendant in fact failed to comply with the licensure requirements for possessing a firearm."  Our decision was based on the United States Supreme Court's recognition, in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111, 2122 (2022) (Bruen), that the Second Amendment to the United States Constitution protects an individual's right to carry a firearm

outside the home. For that reason, our precedent predicated on a narrower view of the rights secured by the Second Amendment, see Commonwealth v. Gouse, 461 Mass. 787, 807 (2012), was no longer valid. Guardado, supra at 689-690. The Guardado holding applied prospectively and to those cases, like this one, that were active or pending on direct review as of the date of the issuance of Bruen. Id. at 694.

Without the benefit of the United States Supreme Court's holding in Bruen, or of our ruling in Guardado, the judge did not instruct the jury that the Commonwealth was required to prove an absence of a valid license, and the defendant did not object to the instructions. The judge, in accordance with Gouse, 461 Mass. at 787, instructed the jury: "The Commonwealth is . . . not required to prove that the defendant knew that the law requires a person to have a license to possess a firearm legally. The license element of this indictment is not relevant to your deliberations and you should put it out of your minds."

When the issue appealed is not preserved, we usually apply "a default standard of review" and grant relief if the error created a substantial risk of a miscarriage of justice. Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002). In Guardado, however, we applied the clairvoyance exception to excuse the failure to object to an absence of licensure jury instruction because "the constitutional theory on which the

defendant . . . relied was not sufficiently developed at the time of trial . . . to afford the defendant a genuine opportunity to raise his claim." Guardado, 491 Mass. at 686, quoting Commonwealth v. Rembiszewski, 391 Mass. 123, 126 (1984). Here, similarly, the defendant did not have an "an adequate opportunity at the time of his trial to raise the present issue." Guardado, supra. Because the clairvoyance exception applies, "[t]he remaining question is whether the error was harmless beyond a reasonable doubt." Commonwealth v. D'Agostino, 421 Mass. 281, 286-287 (1995).

Here, a police officer testified that neither the defendant nor the codefendant had a license for a firearm. There is nothing in the record to suggest that the defendant disputed this testimony, or that the officer's credibility was in question. Based on the police officer's uncontroverted evidence, we are confident that the failure to instruct the jury on licensure was harmless beyond a reasonable doubt. See Commonwealth v. McCray, 93 Mass. App. Ct. 835, 847 (2018), quoting Neder v. United States, 527 U.S. 1, 17 (1999) ("where 'the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless'").

c.  Relief pursuant to G. L. c. 278, § 33E.  The defendant asks us to exercise our authority under G. L. c. 278, § 33E, to enter a not guilty verdict because the weight of the evidence did not support the murder conviction.  As grounds for this extraordinary relief, he points to alleged shortcomings in the Commonwealth's case, including the lack of eyewitness testimony, the poor quality of the surveillance videos, the inability of cell site location information records or cell tower records to pinpoint his exact location at the time of the shooting, and the absence of fingerprint or deoxyribonucleic acid (DNA) evidence connecting him to the crime.  The defendant also mentions that police seized the black sweatshirt he was wearing that evening and it tested negative for traces of gunshot residue.

"Our duty under . . . § 33E[] is to consider broadly the whole case on the law and the facts to determine whether the verdict is consonant with justice" (quotation and citation omitted).  Commonwealth v. Peno, 485 Mass. 378, 403 (2020).  See Commonwealth v. Gricus, 317 Mass. 403, 406 (1944) (§ 33E "opens the facts as well as the law for our consideration").  See also Commonwealth v. Franklin, 465 Mass. 895, 916 (2013) (§ 33E relief warranted where verdict would result in miscarriage of justice).  At the same time, our statutory obligation to conduct "a more searching and comprehensive" review of convictions of murder in the first degree than is granted by ordinary appellate

procedure, Commonwealth v. Billingslea, 484 Mass. 606, 610 (2020), "does not . . . convert this court into a second jury, which must be convinced beyond a reasonable doubt of the guilt of a defendant by reading the reported evidence, without the advantage of seeing and hearing the witnesses." Gricus, supra. It is not enough that, "if on the jury, [we] would have felt a reasonable doubt which the jury did not share." Id. at 407.

The defendant repeats the facts and arguments already presented to the jury. In his closing argument, defense counsel argued that the case is "about a lack of evidence presented by the Commonwealth." He urged the jury to acquit because the Commonwealth failed to introduce inculpatory forensic evidence such as fingerprints, DNA, or precise cell tower location information. Furthermore, defense counsel stressed the importance of testimony from the Commonwealth's chemist that the black sweatshirt tested negative for "blow back" gunshot residue. At best, defense counsel stated, the Commonwealth established that the defendant accepted a ride from his codefendant to both liquor stores prior to the shooting. Defense counsel concluded that the evidence was insufficient to prove that the defendant remained in the Ford Fusion driven by the codefendant after the trip to the liquor stores and was the shooter on the passenger's side of the vehicle.

The jury certainly were entitled to accept the defendant's view of the evidence in this circumstantial case and to find that the Commonwealth failed to produce sufficient evidence to satisfy its burden of proof beyond a reasonable doubt.  The verdict, however, indicates otherwise.  Having carefully reviewed the trial record, we are convinced that the weight of the evidence supports the jury's verdict of murder in the first degree.  In sum, the Commonwealth established the defendant's motive to harm individuals associated with a rival gang, that the codefendant used a car rented in another State in someone else's name, that the defendant possessed a revolver and the shots that killed the victim likely were fired from a revolver, that the defendant met up with the codefendant and drove with him into rival gang territory, that those shots were fired from the passenger's side of the rental car, and that the defendant appeared at a party shortly after the shooting within the Commonwealth's timeline.  See Acevedo, 492 Mass. at    .  After the shooting, the defendant told his then girlfriend, "Shit just got real."

We conclude therefore that the verdict of murder in the first degree was consonant with justice and should stand.

Judgments affirmed.